**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JULIE LAWSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:21-cv-00197** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **SWBC MORTGAGE CORP., and** | ) | **Magistrate Judge Holmes** |
| **PENNYMAC LOAN SERVICES, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants PennyMac Loan Services, LLC ("PennyMac"), by and through undersigned counsel, hereby moves to dismiss the "Twice Amended" Complaint filed by Plaintiff Julie Lawson on January 31, 2022 and all claims against them.  In support of dismissal, PennyMac states as follows:

### INTRODUCTION

This lawsuit is nothing more than a last ditch effort by pro se Plaintiff to punish her mortgage lender and servicer for their handling of certain insurance proceeds, including the ultimate application of those proceeds to her outstanding loan balance following a November 2017 fire that completely destroyed the property.  In fact, the problems that Plaintiff now complains about are those of her own making.  As shown below and as demonstrated by the record, the insurance proceeds were handled in accordance with the terms of Plaintiff's Deed of Trust and Promissory Note, and Plaintiff's claims have no merit.

After the fire occurred, Plaintiff initially advised she intended to rebuild the house, and certain amounts of the insurance proceeds were disbursed to various contractors and vendors.  The

remainder of the insurance proceeds were held in a restricted escrow account—first by the originating lender SWBC Mortgage Corp. ("SWBC"), and then by PennyMac when the servicing and ownership of her loan changed in 2018. Under the terms of the applicable contracts, Plaintiff was required to submit certain documentation in order for the insurance proceeds to be disbursed, but Plaintiff did not submit the necessary paperwork, despite being requested to do so on multiple occasions. Shortly thereafter, Plaintiff also stopped making any loan payments. In the end, Plaintiff was the one who decided not to continue with the rebuilding process because the insurance proceeds were not enough to reconstruct the house in the way that she wanted, and in June 2019, she made the decision to put the property on the market for sale. Ultimately, the remaining insurance proceeds were applied to the outstanding loan balance, as expressly permitted by the Note and Deed of Trust. When Plaintiff sold the property, the entire loan balance was satisfied, and Plaintiff received over $20,000 in profits from the sale. Nevertheless, she has now filed this lawsuit asserting claims against SWBC and PennyMac for breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), fraud/fraudulent concealment, and intentional infliction of emotional distress.

Plaintiff's Second or "Twice Amended" Complaint contains over 235 paragraphs and, with exhibits, spans 122 pages. Despite the length and seeming complexity of the pleadings, however, the relevant material facts are few and straightforward. The relationship and respective duties and obligations between Plaintiff and PennyMac are governed by the Note and Deed of Trust. At all times, PennyMac acted within the scope and authority of the Note and Deed of Trust. The vast majority of the newly added factual allegations concern communications with PennyMac about Plaintiff's frustration over the lack of sufficient funds to complete the rebuild. But these allegations do not change the terms of the obligations under the Note or Deed of Trust, and notably,

Plaintiff has not sued her insurer, Farm Bureau, concerning her complaints about the lack of sufficient insurance proceeds to complete the rebuild. In sum, the factual allegations of the Amended Complaint do not support any breach of contract or fraudulent, deceptive, or oppressive conduct by PennyMac. Further, the statute of limitations bars certain of Plaintiff's claims. Therefore, the Second Amended Complaint and all claims therein should be dismissed against PennyMac for Plaintiff's failure to state any plausible claim for relief.

## FACTUAL BACKGROUND

### I.      Property and Loan History

On October 1, 2016, Plaintiff obtained a loan in the principal amount of $240,562.00 ("Loan") to finance the purchase of real property located at 7456 Sleepy Hollow Road, Fairview, Tennessee 37062 (the "Property"). (ECF 61, ¶¶ 9-10 and 61-1, pp. 14-16; ECF 13-1.) The Loan was secured using the Property as collateral as evidenced by Plaintiff's execution of a Deed of Trust ("DOT" or "Deed") in favor of MERS, as nominee for SWBC, which was recorded in Book 6890, Pages 141-152 with the Register of Deeds for Williamson County, Tennessee.[1] (A true and correct copy of the recorded Deed of Trust is located in the record at ECF 13-1.)

Section 3 of the Note and Section 2 of the DOT specify that all payments accepted by the Lender shall be applied in this order: (1) mortgage insurance premiums; (2) taxes, special

---

[1] When considering a motion to dismiss, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011); *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.")

3

assessments, leasehold payments, and other hazard insurance premiums; (3) interest; (4) principal;

and (5) late charges. (ECF 13-1, ¶ 2; ECF 61-1, p.14.) In the event of a loss, Paragraph 5 of the

Deed expressly states that insurance proceeds are to be handled as follows:

> [A]ny insurance proceeds…shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. **Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.…**
>
> ….**If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2**.

(ECF 61, ¶ 17; ECF 13-1, ¶ 5)(emphasis added). As it relates to repair and restoration of the

Property, the Deed further states:

> Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, **Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage**. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. **Lender may disburse proceeds for the repairs and restoration in a single payment or in series of progress payments as the work is completed**. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

(ECF 13-1, ¶ 7)(emphasis added). The Deed also requires the Lender to release its security interest

"[u]pon payment of all sums secured by this Security Instrument…." (ECF 13-1, ¶ 25.)

## II.     Fire and Insurance Proceeds

On November 29, 2017, the Property was severely damaged by fire. (ECF 61, ¶ 46.)

Plaintiff submitted a claim to her homeowners' insurer, Farm Bureau Insurance ("Farm Bureau"),

4

who deemed the Property a total loss. *(Id.)* Although Plaintiff's prior complaint indicates in December 2017, Farm Bureau estimated the replacement value of the Property to be $260,755.50, Plaintiff's Second Amended Complaint now alleges an estimate of $300,000 loss.[2] (ECF No. 1-2, ¶32; ECF 61, ¶ 46.) Farm Bureau (a non-party to this case) issued payment for the claim in the amount of $218,400 on December 22, 2017 ("Insurance Proceeds"). (ECF 61, ¶ 54.) There are no allegations in any of Plaintiff's three complaints indicating that she contested the overall amount of Insurance Proceeds that she received with Farm Bureau, and Farm Bureau is not a party to these proceedings. Plaintiff admits that the cost to rebuild exceeded the value of her insurance proceeds. (ECF 61, ¶62.)

### III.    PennyMac's Servicing and Ownership of the Loan

On November 2, 2018—almost one full year after the fire and disbursement of the Insurance Proceeds, servicing and ownership of the Loan transferred to PennyMac. (ECF 61, ¶25.) The Insurance Proceeds were likewise transferred to PennyMac and were placed in a restricted escrow account. (*Id.* at ¶ 68.) PennyMac informed Plaintiff of the necessary requirements for release of the Insurance Proceeds to rebuild the Property and asked Plaintiff to submit certain documentation for the rebuild. (ECF 61, ¶70; ECF 61-1, pp. 40-57.) Despite Plaintiff's contentions to the contrary, nothing in the PennyMac letter requires blueprints; however, the letter does require a copy of the contract between the Contractor and Plaintiff, the Contractor's Waiver of Lien, the Contractor's w-9 Form, as well as a copy of the Contractor's license. (ECF 61-1, pp.

---

[2] Plaintiff's original pleading alleges that she would receive a total of $260,000 in Insurance Proceeds pending the timely completion of the Property's rebuild (ECF No. 1-2, ¶¶ 33, 44) and that Farm Bureau's estimate to rebuild the Property was valued at $260,755.50. (*Id.* at ¶ 32.) She provides no support or documentation establishing the change in these amounts that is made in her Second Amended Complaint.

41-44.)   As early as February 2019, PennyMac informed Plaintiff that she had the option to apply the Insurance Proceeds to the balance of her Loan, which Plaintiff explicitly rejected.  (*Id.* at ¶ 95.)

Between December 2018 and May 2019, PennyMac issued seven checks totaling $62,593 from the Insurance Proceeds for repairs to the Property.  ((*See Chart at* ECF 61, pp. 39-40, ¶ 107; see also ECF 1-2, ¶¶ 40, 56, 72.)  Plaintiff ultimately returned four of these checks to PennyMac, and the money was reapplied to her escrow account.  ((ECF 61, ¶ 106.)  By June 2019, rebuild was no longer possible and Plaintiff put the Property on the market for sale.  (ECF 1-2, ¶ 40.)  After Plaintiff indicated she no longer wished to rebuild the Property, PennyMac applied the remaining Insurance Proceeds, which equaled $201,132.02, to the outstanding balance of Plaintiff's Loan, effective February 3, 2020.  (ECF 1-2, ¶¶ 51, 80; ECF 61, ¶131.)

The Property was sold on or about March 27, 2020 for $60,000.  (ECF 1-2, ¶¶ 27, 40, 94(c); ECF 61, ¶140.)  PennyMac applied $32,156.69 from the sale proceeds to pay off the outstanding balance of Plaintiff's Loan, paid $3,979 for realtor fees and closing costs, and distributed the remaining balance of $23,864 to Plaintiff.   (ECF 1-2, ¶ 94(c).)   Upon payoff of the Loan, PennyMac executed a Deed of Release, which was recorded on April 20, 2020 with the Williamson County Register of Deeds at Book 7964, Pages 936-937.  (ECF 13-2.)  Ultimately, Plaintiff received the benefit of $218,400.00 in Insurance Proceeds (ECF 1-2, ¶¶ 26, 29, 31), plus $60,000.00 for the sale of the Property (ECF 1-2,. at ¶¶ 27, 40, 94(c)), for a total aggregate sum of $278,400.00 – which is far more than the $245,000.00 she paid to purchase the Property.  (ECF 1-2, ¶¶ 12-13.)  Once her Loan for $240,562.00 was paid in full, Plaintiff received an additional $23,864 in profits.  (ECF 1-2, ¶ 94(c).)

109219020v.1

## PROCEDURAL HISTORY

Plaintiff commenced this lawsuit against PennyMac, SWBC, and Angelo Marchese on February 1, 2021 in the Circuit Court for Williamson County, Tennessee, asserting claims for violation of the Tennessee Consumer Protection Act ("TCPA"), breach of contract, fraud, and intentional infliction of emotional distress. (ECF 1-1.) Plaintiff filed an Amended Complaint on March 2, 2021. (ECF 1-2.) On March 10. 2021, the case was removed to this Court. (ECF 1.) Following removal, PennyMac and Marchese moved to dismiss the lawsuit against them on the basis of lack of personal jurisdiction as to Marchese and because the Amended Complaint failed to state any plausible claim for relief against either of them. (ECF 13, 14.) In response, Plaintiff sought to remand the case back to state court, which request was ultimately denied. (ECF 41.) Following the denial of remand, Plaintiff moved to amend her complaint for a second time. (ECF 51.) Pursuant to the Court's Order, Plaintiff's "Twice Amended Complaint" (dropping individual defendant Marchese) was filed on January 31, 2022. (ECF 61.)

Like the first amended complaint, Plaintiff's "Twice Amended" Complaint asserts the following claims against PennyMac: breach of contract, fraud/fraudulent concealment, intentional infliction of emotional distress, and violation of the TCPA. While Plaintiff has added a number of additional factual allegations in her Second Amended Complaint explaining details of her divorce, efforts to obtain bids from contractors, and her view of various communications with PennyMac, none of these new allegations cure the legal defects in her claims against PennyMac. These allegations do not alter the terms of her Deed or her Note, which are the documents governing her relationship with PennyMac. Nor do they provide a basis for circumventing the applicable statutes of limitation. Accordingly, because Plaintiff still has not asserted any plausible claim for relief against PennyMac, this action should be dismissed.

109219020v.1

## ARGUMENT & CITATION TO AUTHORITIES

### I.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In considering a motion to dismiss, however, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013).  Rather, a plaintiff is required to provide the grounds showing entitlement to relief, and this requires more than labels, conclusions, and a formulaic recitation of the elements. *Id.*  Nevertheless, when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," then dismissal is appropriate. *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012).

### II.  Plaintiff Cannot State a Plausible Claim for Violation of the TCPA.

#### A.  *Any TCPA Claim Against PennyMac is Time-Barred.*

"When considering a motion to dismiss on the ground of a statute of limitations, the Court must decide whether 'it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 761 (M.D. Tenn. 2019).  The TCPA has a 1-year statute of limitations from a person's discovery of the unlawful act or practice.  Tenn. Code Ann. § 47-18-110.  *See also Lindsey v. Allstate Ins. Co.*, 34 F. Supp. 2d

8

636, 648 (W.D. Tenn. 1999) ("All private actions under the TCPA 'shall be brought within one (1) year from a person's discovery of the unlawful act or practice.'").

Plaintiff filed this lawsuit on February 1, 2021 (ECF 1-1); therefore, any cause of action arising before February 1, 2020 is not actionable under the TCPA. Plaintiff's TCPA claim against PennyMac is based on (1) PennyMac's acceptance of Plaintiff's monthly mortgage payments; (2) PennyMac's sending of a "Property Loss Claim Package" upon the servicing transfer from SWBC in November 2018; and (3) various communications regarding the handling of the Insurance Proceeds and rebuilding of the Property. (ECF 61, ¶¶ 194-211.) All of these events occurred prior to February 1, 2020. Lawson attempts to get around the 1-year statute of limitations by asserting that her claim only accrued when she learned of PennyMac's refusal to apply the insurance proceeds in the manner that she demanded on January 31, 2020, but her prior admissions and other allegations directly contradict that position.

First, the mortgage payments Lawson references were made between November 2017 and October 2019, when she stopped paying her mortgage. (*See Chart at* ECF 61, pp. 39-40, ¶ 107.) Second, the "Property Loss Claim Package" was sent to Plaintiff on November 12, 2018. (ECF 61, ¶ 70; ECF 61-1, pp. 40-57.) Third, any conversations regarding the rebuild of the Property occurred between the time of the fire in November 2017 and June 2019, when Plaintiff decided to put the Property on the market for sale. (ECF 1-2, ¶ 40.) Indeed, Plaintiff herself asserts in Paragraph 106 that "Because Lawson was incapable of rebuilding her home, she mailed the three PNMAC checks back [ ] on July 4, 2019." (ECF 61, ¶ 106.) Thus, she knew at least by July 2019 that she would not rebuild, and the Deed is clear as to how insurance proceeds are applied when repair is not economically feasible. (Deed at ECF 13-1, p. 5.)

It is well established law in Tennessee that a claim accrues when the plaintiff discovers her injury or through the exercise of reasonable care and diligence, it should have been discovered. *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). All of these events giving rise to Plaintiff's TCPA claim occurred well before February 1, 2020. Accordingly, Plaintiff's claim for violation of the TCPA against PennyMac is time-barred and should be dismissed. *See Lindsey*, 34 F. Supp. 2d at 649 (dismissing TCPA claims as time-barred where the action was filed more than one year after the person's discovery of the unlawful act).

**B.      *No Allegations Support a Plausible Violation of the TCPA.***

Any TCPA claim against PennyMac also fails on the merits. The TCPA prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104. "To make out a claim under the TCPA, a plaintiff must establish: (1) an ascertainable loss of money or property; (2) that such loss resulted from an unfair or deceptive act or practice; and (3) that the act or practice is declared unlawful under the TCPA." *Amour v. Bank of Am., N.A.*, No. 1:13-CV-144, 2013 WL 6497821, at *5 (E.D. Tenn. Dec. 10, 2013). "Although the TCPA imposes no single standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as 'a material representation, practice, or omission likely to mislead…reasonable consumers to their detriment.'" *Moore v. BAC Home Loans Servicing, LP*, No. 11-2845-P, 2012 WL 13020708, at *3-4 (W.D. Tenn. Sept. 11, 2012).

Notably, however, the Tennessee Court of Appeals has further explained that the predicate unfair or deceptive act "**must affect trade or commerce, as defined by the Act**," in order for the TCPA to apply. *Davenport v. Bates*, No. M2005–02052–COA–R3–CV, 2006 WL 3627875, at *17 (Tenn. Ct. App. Dec. 12, 2006) (emphasis added). By the statute's own definitions, "trade" and "commerce" mean "the advertising, offering for sale, lease or rental, or distribution of any goods,

services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47–18–103(19).  Since these terms are "specifically defined to limit the [TCPA's] application," Tennessee courts have made it clear that the parameters of the TCPA "do not extend to every action of every business in the State." *Jones v. BAC Home Loans Servicing, LP*, 2017 WL 2972218, at *8 (Tenn. Ct. App. 2017)(quoting *Pursell v. First Amer. Nat'l Bank*, 937 S.W.2d 838, 841 (Tenn. 1996)).

In this instance, Plaintiff's TCPA claim fails because Plaintiff does not allege any actions by PennyMac that affect "trade" or "commerce" as defined by the statute or that would mislead a reasonable consumer to their detriment.   It is already established that the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings. *Gibson v. Mortgage Elec. Registration Sys., Inc.,* No. 11–2173–STA, 2011 WL 3608538, at *5 (W.D. Tenn. Aug. 16, 2011) (quoting *Simms v. CIT Group Consumer Fin.,* No. 08–2655–STA, 2009 WL 973011, at *9 (W.D. Tenn. 2009)) (stating "this Court and others applying Tennessee law have held that 'the TCPA does not provide a cause of action for the conduct of foreclosure' ").  *See also Pugh v. Bank of Am.*, No. 13–2020, 2013 WL 3349649, at *7 (W.D. Tenn. July 2, 2013) ("[C]ourts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA."); *Schmidt v. Nat'l City Corp*, No. 3:06–CV–209, 2008 WL 5248706, at *8 (E. D. Tenn. Dec. 17, 2008)(recognizing that "[t]he actions of a bank in repossessing and disposing of its collateral do not constitute violations of the [TCPA], even if the bank acted wrongfully in repossessing the collateral")*; Hunter v. Washington Mut. Bank,* No. 2:08–CV–069, 2008 WL 4206604 (E.D. Tenn. 2008).

The same reasoning applies here. As the Court recognized in *Schmidt*, when a debtor defaults on a mortgage payment, and the mortgage holder forecloses on the collateral that secured

the loan (in this case, the Property), then the TCPA does not apply. 2008 WL 5248706, at *8. That is because a foreclosure which is expressly allowed by the applicable deed of trust does not fall within the TCPA's definition of "trade," "commerce," or "consumer transaction." *See* Tenn. Code Ann. § 47-18-103(19). Likewise, in this case, PennyMac's application of the insurance proceeds in accordance with the terms of Plaintiff's Deed does not fall within the TCPA's definition of "trade," "commerce," or "consumer transaction." Nor do PennyMac's actions affect the 'advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated…." Rather, PennyMac is simply following the terms of the contract that Plaintiff originally agreed to be bound by, which PennyMac must honor as a subsequent transferee. Accordingly, Lawson's grievances about the handling of her insurance proceeds cannot form the basis of a TCPA claim, and any such claim must be dismissed. *See also Pursell v. First Am. Nat. Bank*, 937 S.W.2d 838, 842 (Tenn. 1996) (holding that the TCPA's definition of "trade or commerce" did not create a cause of action for deceptive repossession procedures in the actions of a bank and its agent in carrying out a repossession of the collateral securing a loan).

### III.    Plaintiff's Claim for Breach of Contract Should be Dismissed.

### A.    *PennyMac Did Not Breach the Deed of Trust.*

Plaintiff also asserts that PennyMac breached the contract (the Deed of Trust) through the misapplication of her Insurance Proceeds; however, the facts alleged plainly demonstrate that no breach occurred. To state a claim for breach of contract, a plaintiff must show: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract. *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 478 (6th Cir. 2014) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn.

Ct. App. 2005)). While there appears to be no dispute that the Deed constitutes a valid contract between Plaintiff and PennyMac, there are no allegations that suggest PennyMac actually breached the terms of the Deed or proximately caused the damages Plaintiff has identified. In fact, the documents in the record demonstrate exactly the opposite—that PennyMac had the right to apply the Insurance Proceeds and did so in accordance with the terms of the Deed.

PennyMac's duties with respect to any Insurance Proceeds are outlined in Paragraphs 5 and 7 of the Deed. In particular, Paragraph 5 of the DOT states, "any insurance proceeds…shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible…If the restoration or repair is not economically feasible…the insurance proceeds shall be applied to the sums secured by this Security Instrument." (ECF 13-1, ¶ 5.) Since Plaintiff initially indicated restoration or repair of the Property was economically feasible, PennyMac acted properly and within the terms of the Deed of Trust by holding the Insurance Proceeds in a restricted escrow account during the attempt to restore and repair the Property. (ECF 13-1, ¶ 5.) Indeed, the DOT states that during any "repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed…." (ECF 13-1, ¶ 5.) But, Plaintiff had a contractual obligation to "*promptly* repair the Property" following the fire loss "if repair or restoration [was] economically feasible," which she did not do. (ECF 13-1, ¶ 5, 7.) The fire occurred in November 2017, and by the time Plaintiff's loan was service-transferred to PennyMac in November 2018—one full year later— Plaintiff still had not taken the steps necessary to rebuild the property. Thus, her actions cannot be considered prompt.

Plaintiff admits that while she originally intended to rebuild, she did not do so because (she contends) the Insurance Proceeds were insufficient to cover the replacement cost of rebuilding her

13

home.  (ECF 61, ¶¶ 106, 164.)  Although Plaintiff has now added numerous new assertions in the Second Amended Complaint concerning the higher estimates and costs to rebuild, these new allegations do not change the actual terms of the Deed, which governs the parties' relationship. More importantly, paragraph 7 of the Deed states that even if the repair was feasible but the insurance proceeds were not sufficient, "Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration."  (ECF 13-1, ¶ 7.)

In this instance, since restoration was initially determined to be economically feasible with the Insurance Proceeds provided to Plaintiff, PennyMac was under no obligation to automatically apply the Insurance Proceeds to the Loan. Rather, Plaintiff had an affirmative obligation to **<u>promptly</u>** repair the Property.  (ECF 13-1, ¶¶ 5,7.)  She did not act promptly.  And, any criticism from Plaintiff about the purported belated application of Insurance Proceeds to her Loan is contradicted by her own recitation of her divorce proceedings and failure to act promptly to take action to restore/repair/rebuild the Property in the year before PennyMac began servicing the loan.[3] Once Plaintiff decided the repair was not feasible, other terms of the Deed became applicable— namely, that portion of paragraph 5 which indicates "If the restoration or repair is not economically feasible or if Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower."  (ECF 13-1, ¶ 5.)  None of these terms were a surprise to Plaintiff.  Equally important, by Plaintiff's own admission, she had already stopped paying her mortgage in 2019 and was delinquent on her loan.  Thus, PennyMac was well within its rights under the Deed to apply the

---

[3] Plaintiff's allegations are further belied by her own prior admissions that PennyMac informed Plaintiff of her ability and option to apply the loan proceeds to her loan balance as early as February 2019, yet she explicitly instructed PennyMac not to do so.  (ECF No. 1-2, ¶ 54.)

Insurance Proceeds to the outstanding loan balance, and there was no breach. *See Smith*, 552 F. App'x at 478 (granting motion to dismiss breach of contract claim where loan servicer acted within the scope of the deed of trust and thus did not breach the contract).

Finally, Plaintiff's allegations that she was damaged by a breach of contract are likewise meritless. Plaintiff obtained a loan for $240,562 to purchase Property. Following her insurance claim, she received the claim proceeds of $218,400 that could have been used to rebuild the Property or applied towards a payoff of the Loan balance. Plaintiff initially chose to pursue a rebuild. She later reversed course. Only then were the $201,132.02 of the remaining Insurance Proceeds applied to her Loan, leaving an outstanding balance of $32,156.69. Plaintiff then sold the Property for $60,000. The sale proceeds paid the Loan off in full, and Plaintiff received a check for $23,864. Any purported breach of the Deed of Trust by PennyMac could not have plausibly caused Plaintiff damages when she had her loan paid off in full, and she received $23,864 in excess proceeds from the sale of the Property. While this may not have been the result Plaintiff wanted, it does not mean that PennyMac breached the Deed or Note. For these reasons, Plaintiff's claim for breach of contract fails as a matter of law.

## IV.    Plaintiff's Fraud Claims Fail to State a Plausible Claim for Relief.

### A.    *An Alleged Breach of Contract Does Not Constitute a Claim for Fraud.*

Plaintiff offers multiple allegations in support of her fraud claim that PennyMac's alleged fraudulent conduct was through its breach of the Deed of Trust. But all of this conduct is related to her breach of contract claim; it does not arise out of any separate duty or transaction. "An action is one in contract and not in tort when an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby." *Weese v. Wyndham Vacation Resorts*, No. 3:07-CV-433, 2009 WL 1884058, at *6 (E.D.

Tenn. June 30, 2009). "Only when an act constituting a contractual breach also constitutes a breach of a common law duty independent of the contract does an action arise in tort and not in contract." *Id.*

Here, Plaintiff does not identify any independent duty owed to her by PennyMac. She merely complains that her damages stem from an alleged breach of the Deed of Trust. A tort-based fraud claim cannot survive where a plaintiff does not identify a common law duty independent of the contract. *Weese*, 2009 WL 1884058, at *6. Such an allegation does not transform her breach of contract claim into a tort. "Even a willful breach of contract does not transform a breach of contract into a tort." *Schilling Foods*, 2019 WL 11269042, at *3. Furthermore, Tennessee law does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers, absent special circumstances which do not exist here. *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996)); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992). "This rests on the recognition that bank-depositor or debtor-creditor relationships generally involve arm's-length dealings." *Power & Tel. Supply Co.*, 447 F.3d at 932. This rule applies to the relationship between mortgage servicers and borrowers. *See, e.g., Layne v. Ocwen Loan Servicing, LLC*, No. 4:17-CV-4, 2018 WL 1524608, at *6–7 (E.D. Tenn. Mar. 28, 2018); *Vaughter v. BAC Home Loans Servicing, LP*, No. 3:11-CV-00776, 2012 WL 162398, at *5 (M.D. Tenn. Jan. 19, 2012). Accordingly, since there is no separate duty owed by PennyMac to Plaintiff outside the terms of the contract (the Deed of Trust), than any fraud claim against PennyMac should be dismissed. *Vanderbilt*, 382 F. Supp. 3d at 763-64.

109219020v.1

**B.      There are No Actionable Intentional Misrepresentations Alleged.**

"Intentional misrepresentation is analyzed as a claim for fraud under Tennessee law." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.,* 447 F.3d 923, 931 (6th Cir. 2006). A claim for fraud must be "stated with particularity, and the plaintiff must, at a minimum, allege the time, place, and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Id.* (citing Fed. R. Civ. P. 9(b)); *see also Coffey v. Foamex, L.P.,* 2 F.3d 157, 161–62 (6th Cir. 1993). To state a claim for intentional misrepresentation, a plaintiff must allege: "(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). *See also Diggs v. Lasalle Nat'l Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012).

Here, Plaintiff acknowledges she was aware of the terms of the Deed of Trust. She alleges PennyMac sent her a Property Loss Claim Package in November 2018 when it began servicing her Loan – one whole year after the fire. The Property Loss Claim Package stated, "All the information needed to process [her] Property Loss Claim in 3 easy steps!" Plaintiff alleges this statement was a fraudulent misrepresentation. But to maintain a fraud claim, the allegations must show that "defendant made a false statement of material fact that is designed to induce the plaintiff to rely on it." *Thompson,* 773 F.3d at 752. Plaintiff does not plausibly show that PennyMac intended to

deceive her. Nor do her allegations explain how the loss claim package sent by PennyMac was false or how she was induced to rely on it. The Sixth Circuit has explained that "conclusory statements of reliance are not sufficient to explain with particularity how the plaintiff detrimentally relied on the alleged fraud." *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006). Regardless, the statement can hardly be considered a statement of fact. *See id.* at 753 (explaining that plaintiff must point to a false "representation of a present or past fact" to support an intentional misrepresentation claim).

To the extent Plaintiff contends the fraud claim is based on any other "misrepresentations," these allegations also fail. There can be no reliance (and therefore, no fraud) when they are not adequately identified and detailed to succeed under Rule 9. Mere allegations of legal conclusions do not withstand a motion to dismiss. *Diggs v. Lasalle Nat'l bank Ass'n*, 387 S.W.3d at 565 (affirming dismissal of fraud claim where the allegations in the complaint were "unclear, conclusory, and generally insufficient"). Even where Plaintiff may have identified the speaker and/or substance of an alleged misrepresentation, the alleged misrepresentations are not of *material* facts, nor does she explain how or why any reliance was reasonable. The Second Amended Complaint is insufficient to sustain a claim of fraud against PennyMac, and it should be dismissed. *See Kincaid*, 221 S.W.3d at 41.

### C.     Fraudulent Concealment Was Not Adequately Alleged.

Under Tennessee law, a claimant must allege five elements to recover for fraudulent concealment: (1) defendant concealed or suppressed a material fact; (2) defendant had a duty to disclose that fact to plaintiff; (3) defendant intentionally concealed or suppressed that fact with the intent to deceive plaintiff; (4) plaintiff was unaware of the act and would have acted differently if it had known about the concealed fact; and (5) plaintiff was damaged as a result of the concealment

or suppression of the fact. *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007). "A statement is material or involves a material fact if it will likely affect the conduct of a reasonable person." *Id.*

However, the Tennessee Supreme Court has long emphasized that a claim of fraudulent concealment will not stand in the absence of an affirmative duty to disclose. *Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933)); *see also Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998) ("The tort of fraudulent concealment is committed when a party who *has a duty to disclose a known fact or condition* fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." (citing *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)) (emphasis added). Again, no fiduciary relationship arises between a lender and a borrower; therefore, PennyMac had no separate duty to disclose anything further to Plaintiff. *See Power & Telephone Supply Co.,* 447 F.3d at 932; *Shirley v. NationStar Mortg., LLC*, No. 2:10-CV-144, 2011 WL 1196787, at *3 (E.D. Tenn. Mar. 29, 2011)("In Tennessee, absent special facts and circumstances, the relationship between a lender and a borrower is not inherently fiduciary."). Even so, Plaintiff has not plausibly alleged that PennyMac concealed anything.

## V. The Complaint Does Not Sufficiently Plead a Claim for Intentional Infliction of Emotional Distress.

Under Tennessee law, "[t]he elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Pagliara v. Moses*, 605 S.W.3d 619, 628 (Tenn. Ct. App. 2020) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)). "It [is] not enough that the defendant has acted with an

109219020v.1

intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Odom v. Claiborne County, Tenn.*, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016) (holding even derogatory or inappropriate comments do not rise to the high standard of outrageousness necessary to sustain a claim for intentional infliction of emotional distress). "*Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*." *Id.* (emphasis in original).

Plaintiff contends she was harmed by PennyMac's alleged breach of the Deed of Trust. But "a breach of contract, even if clear, is not by itself actionable under the tort of outrageous conduct, nor will a negligent or inadvertent act give rise to such a claim." *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615, 623 (Tenn. Ct. App. 1986). In fact, multiple Tennessee courts have repeatedly held that even in instances where a defendant used derogatory language, committed intentional torts, or carried out its duties as a creditor against plaintiff, a claim for IIED will be dismissed for failure to state a claim. *See Pagliara*, 605 S.W.3d at 628 (holding that allegations of complaint did not state a claim for IIED as a matter of law); *Odom*, 498 S.W.3d at 887; *Finley v. Kelly*, 384 F. Supp. 3d 898, 912-14 (M.D. Tenn. 2019) (discussing how high the standard is to state an IIED claim in the creditor/debtor context).

Here, Plaintiff's allegations against PennyMac do not rise to the level of outrageousness or show they acted "beyond all bounds of decency" as is required to state a claim for relief. *In re Jenkins*, 488 B.R. 601, 617 (Bankr. E.D. Tenn. 2013) (dismissing IIED claim because alleged conduct could be perceived as reckless or as causing embarrassment, but was not "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly

20

intolerable in a civilized community").  Instead, the allegations show PennyMac lawfully acted for the purpose and within the scope of servicing Plaintiff's Loan and within the rights afforded by the Deed.  As such, Plaintiff's IIED claims cannot be maintained and should be dismissed.

**VI.     No Further Amendments Should Be Permitted.**

This is Plaintiff's third bite at the apple.  She has had ample opportunity to assert a plausible claim against PennyMac if one exists—which it does not.  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).*Id.* (citing *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir. 1993)).   Plaintiff has no viable claims as to PennyMac relating to the handling of her Insurance Proceeds; therefore, any further chances to amend should be denied.

<u>CONCLUSION</u>

As discussed above, Plaintiff's claims are fatally deficient or have no merit as a matter of law.  For these reasons, PennyMac respectfully requests that the Court dismiss this action in its entirety as to it.

Dated: March 11, 2022.                Respectfully submitted,

**BUTLER SNOW LLP**

/s/Melody McAnally
Melody McAnally, BPR #25971
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone (901) 680-7200
Facsimile (901) 680-7201
melody.mcanally@butlersnow.com

109219020v.1

-and-

**LOCKE LORD LLP**

*/s/Elizabeth J. Campbell*
Elizabeth J. Campbell
Georgia Bar No. 349249
*Admitted Pro Hac Vice*
ecampbell@lockelord.com
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, Georgia 30305
(404) 870-4679
(404) 806-5679 Facsimile

***Attorneys for Defendant PennyMac Loan Services, LLC***

109219020v.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 11, 2022, I served a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S 2ND AMENDED COMPLAINT on the following party via U.S. Mail, postage prepaid:

Julie Lawson
625 Harpeth Bend Drive
Nashville, TN 37221

I further certify that on March 11, 2022, I attempted to electronically file the foregoing document with the Clerk of Court of the United States District Court for the Middle District of Tennessee, Nashville Division, via their ECF e-filing System, which was offline for transition to the NextGen system and, therefore, I electronically filed the foregoing document on March 14, 2022, serving the following parties:

| | |
|---|---|
| Julie Lawson<br>625 Harpeth Bend Drive<br>Nashville, TN 37221<br>Via Email and US Mail | Mark M. Bell<br>Kevin T. Elkins<br>WALLER LANSDEN DORTCH & DAVIS, LLP<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 3721<br>Via CM ECF |

<u>*/s/ Elizabeth J. Campbell*</u>
Elizabeth J. Campbell, Esq.
(Admitted Pro Hac Vice)

109219020v.1