IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JULIE LAWSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:21-cv-00197 |
| | ) Judge Aleta A. Trauger |
| SWBC MORTGAGE CORP., PENNYMAC LOAN SERVICES, LLC, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Magistrate Judge Holmes has filed a Report and Recommendation ("R&R") (Doc. No. 113) recommending that (1) the Motion to Dismiss Plaintiff's Fourth Amended Complaint filed by defendant PennyMac Loan Services, LLC ("PennyMac") (Doc. No. 103) be granted with respect to *pro se* plaintiff Julie Lawson's Tennessee Consumer Protection Act ("TCPA") and intentional infliction of emotional distress ("IIED") claims and denied in all other respects; and (2) the Motion to Dismiss Plaintiff's Fourth Amended Complaint filed by defendant SWBC Mortgage Corp. ("SWBC") (Doc. No. 105) be denied.

Now before the court are (1) SWBC's Objections (Doc. No. 114) to the portion of the R&R recommending that its Motion to Dismiss be denied; and (2) the plaintiff's Objection (Doc. No. 116) to that portion of the R&R recommending that the plaintiff's TPAC and IIED claims against PennyMac be dismissed.

For the reasons set forth herein, both sets of Objections will be overruled, and the R&R will be accepted in its entirety. PennyMac's motion will, as recommended, be granted in part and denied in part, and SWBC's motion will be denied.

## I. STANDARD OF REVIEW

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not

entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The R&R sets forth a comprehensive and detailed account of the background and facts, which the court adopts and accepts in their entirety.[1] The court will set forth here only a summary of the facts necessary to understand the parties' Objections.

The operative pleading is Lawson's Fourth Amended Complaint ("FAC") (Doc. No. 97). The FAC alleges generally that Lawson obtained a mortgage loan from defendant SWBC in October 2016, for the principal sum of $240,562.00, in order to purchase property in Fairview, Williamson County, Tennessee (the "Property"), on which was located an 1,812 square foot residence. In accordance with one of the requirements of the Deed of Trust issued by SWBC for the Property (Doc. No. 13-1), the plaintiff obtained, and maintained, hazard insurance.

Just over a year later, in November 2017, a fire destroyed the plaintiff's home on the Property. The plaintiff notified SWBC and her insurer, Farm Bureau, about the fire. She indicated then (and consistently thereafter) that she intended to rebuild. Farm Bureau issued a check in the amount of $218,400 to Lawson and SWBC jointly. SWBC deposited the check and maintained control over the funds, at least until it sold the plaintiff's mortgage to defendant PennyMac in November 2018.

Lawson's home was never rebuilt, despite her best efforts, allegedly due in large part to PennyMac's obstructive conduct. Lawson now alleges that, despite her strong and unwavering

---

[1] As described in the R&R, this case has a somewhat complex procedural background, much of which is not relevant and will not be recounted here. Although the plaintiff, as noted below, objects to some parts of the Magistrate Judge's summary of both the procedural background and the factual allegations in the FAC, none of these objections is material to the conclusions of law set forth in the R&R or reached in this Memorandum.

desire to rebuild her home, it was *never* economically feasible to rebuild and, therefore, under the terms of the Deed of Trust executed in connection with her mortgage, SWBC and PennyMac breached the Deed of Trust by not notifying her that the rebuild was economically infeasible, applying the insurance funds to the outstanding mortgage, and releasing her from the mortgage. At that point, she claims, she could have obtained third-party financing on a construction loan that would have allowed her to rebuild her home.

The Deed of Trust contains the following provisions relevant to the plaintiff's claims:

> 5. **Property Insurance** . . . .
>
> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. . . . Unless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.
>
> . . . .
>
> 7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property . . . . Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such

> purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

(Deed of Trust, Doc. No. 13-1 ¶¶ 5, 7.)

In support of her assertion that it was never economically feasible to rebuild, the plaintiff alleges that the insurance proceeds from Farm Bureau were not sufficient to cover the cost of rebuilding (*id.* ¶ 17); the replacement value of her home assigned by State Farm was insufficient by $70,000 (*id.* ¶ 62(a)); the terms "restoration and repair" as used in the Deed of Trust did not apply to the complete rebuild of a home completely demolished by fire (*id.* ¶ 119); SWBC's and then PennyMac's security would have been reduced by any attempt to rebuild (*id.* ¶ 120); and any contention that rebuilding was economically feasible was directly contradicted by a PennyMac agent's "notations on Lawson's account, the Adjuster worksheet, math, and reality" (*id.* ¶ 143(a)). She alleges that SWBC knew or had constructive knowledge of economic infeasibility by January 11, 2018 and that PennyMac knew no later than November 2, 2018. (*Id.* ¶¶ 162(d), 164(f).) She asserts that the Deed of Trust contains no definition of economic feasibility; that PennyMac admitted that rebuilding was economically infeasible, that restoration/rebuilding was never determined to be economically feasible, and that, under any of the many definitions of economic feasibility that exist, rebuilding her home was never economically feasible. (*See generally id.* ¶ 164.)

Ultimately stymied in her attempts to rebuild and threatened with foreclosure by PennyMac, the plaintiff sold the property in March 2020 for $60,000, which she alleges was $199,000 less than the value of the Property as of the day before the fire and much of which was wrongfully kept by PennyMac as "payoff." (*Id.* ¶¶ 152, 154.)

The plaintiff filed suit against SWBC and PennyMac in state court on February 1, 2021, asserting claims against both defendants for violating the TCPA, breach of contract, fraud, and IIED (against PennyMac only). The case was removed to federal court on the basis of diversity jurisdiction, and the FAC is now the operative pleading. With the filing of the FAC, the claims have been pared down somewhat, with the plaintiff asserting only a breach of contract claim against SWBC, and claims against PennyMac for breach of contract, violation of the TCPA, and IIED. (Doc. No. 97, at 54–69.) Both defendants filed Motions to Dismiss (Doc. Nos. 103, 105), seeking dismissal of all claims asserted against them. The motions were referred to the Magistrate Judge for issuance of a Report and Recommendation.

The R&R recommends that SWBC's motion be denied and that PennyMac's motion be granted with respect to the TCPA and IIED claims but denied as to the breach of contract claim. (Doc. No. 113.) The R&R notified the parties of their obligation to file timely Objections in order to seek review of any of the findings or conclusions set forth therein. Only Lawson and SWBC have filed Objections and supporting Memoranda. (Doc. Nos. 114, 115, 116, 117.) Each has responded to the other's Objections. (Doc. Nos. 119, 120.)

### III. SWBC'S OBJECTIONS

SWBC objects to the R&R only insofar as the R&R recommends the denial of SWBC's Motion to Dismiss the breach of contract claim against it.

To state a colorable claim for breach of contract under Tennessee law, a plaintiff must plausibly allege (1) the existence of a valid contract, (2) breach, and (3) resulting damages. *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). SWBC disputes whether the plaintiff has adequately alleged breach in this case.

More specifically, it contends that, to plausibly allege a breach of the Deed of Trust, Lawson must not only allege that SWBC failed to apply the insurance proceeds to the balance of her loan but that it was economically infeasible to rebuild the home. (Doc. No. 115, at 4.) It argues that the Magistrate Judge erred in finding that the plaintiff adequately alleges that it was not economically feasible to rebuild. "Stated differently, for purposes of the Court's [Rule] 12(b)(6) analysis, if Plaintiff has not plausibly alleged that it was not economically feasible for her to rebuild her home, then she has not met her burden to allege facts plausibly entitling her to relief against SWBC for breach of contract." (Doc. No. 115, at 2.) According to SWBC, the facts in the FAC establish that rebuilding was, in fact, economically feasible, so the plaintiff's claim must fail. SWBC argues that the Magistrate Judge erred in concluding, with little analysis, that the existence of economic feasibility was a fact question not resolvable on a motion to dismiss. (*See* Doc. No. 113, at 12 (quoting *Gillis v. Wells Fargo Bank, N.A.*, 875 F. Supp. 2d 728, 737 (E.D. Mich. 2012)).) According to SWBC, the Magistrate Judge's reliance on *Gillis* was misplaced, because the defendant in that case was attempting to introduce extrinsic evidence to establish economic infeasibility as an affirmative defense, whereas the plaintiff's assertion of economic infeasibility in this case—as an element of her claim on which she bears the burden of proof—is defeated by the factual allegations in the FAC. (Doc. No. 115, at 2–3.)

SWBC asserts that the court can construe the term "economically feasible" as a matter of law, and that, as a matter of law, the plaintiff's allegations in the FAC satisfy that definition. Specifically, SWBC points to the plaintiff's allegations that, under the State Farm policy, she was entitled to replacement cost coverage in the amount of $262,080, if she "timely rebuilt her home"; she received $218,400 of that amount immediately following the loss; and she would have been entitled to an additional 20% if she rebuilt within two years. (Doc. No. 115, at 3, 8–9 (citing Doc.

No. 97 ¶¶ 16, 43(d).) According to SWBC, the plaintiff also alleges that the cost to rebuild her home was $260,755.50, and that, because the available insurance proceeds exceeded the cost to rebuild, it was economically feasible to rebuild. (*Id.*) SWBC proposes to define the term "economically feasible" as "economically practical" and asserts that, "[n]o matter how the Court construes the phrase, there is no reasonable construction in which rebuilding would be 'not economically feasible' when the plaintiff has access to sufficient insurance proceeds to pay, in full, the estimated cost of rebuilding." (Doc. No. 115, at 9.)

The court, in short, is not persuaded. SWBC overlooks the plaintiff's allegations that the estimated cost of rebuilding was *not* sufficient; that, with the funds available, Lawson would have been required to rebuild a smaller house, thus impairing SWBC's (and then PennyMac's) security interest; and that SWBC was on constructive notice upon receipt of the appraisal that rebuilding was not economically feasible. In addition, SWBC does not address the plaintiff's allegations that the Deed of Trust's references to "restoration or repair" and "maintain" simply did not apply to a situation in which the residence was destroyed to the ground, requiring rebuilding from scratch, rather than simply restoring or repairing an existing structure.

The court finds, at this juncture in the proceedings, that the plaintiff has adequately alleged that it was never possible to restore or repair her destroyed home and that it was not economically feasible to rebuild from scratch. SWBC's Objections to the R&R will be overruled, and its Motion to Dismiss will be denied.

## IV. THE PLAINTIFF'S OBJECTION

In her Objection (Doc. No. 116) and supporting Memorandum (Doc. No. 117), the plaintiff notes her disagreement with some of the Magistrate Judge's recitation of the facts and takes issue with the recommendation that her TCPA and IIED claims against PennyMac be dismissed. The plaintiff's objections to the Magistrate Judge's recitation of the procedural history of the case and

some of the facts are completely irrelevant to the ultimate recommendations and will be overruled without discussion. The plaintiff's other objections are addressed below.

    A.    **TCPA Claim**

The R&R correctly and comprehensively articulates the elements of a TCPA claim under Tennessee law, correctly recognizes that claims under the TCPA are subject to a one-year statute of limitations, *see* Tenn. Code Ann. § 47-18-110, and finds that, because the three acts by PennyMac that the plaintiff identifies as violating the TCPA are clearly alleged to have taken place—and to have been discovered by the plaintiff—more than one year before the plaintiff filed her original Complaint in state court on February 1, 2021, the claims are time-barred. Regarding the third act—that PennyMac manufactured a "fake loan default" to enable it to accelerate the terms of the plaintiff's home mortgage and foreclose on the property, which forced the plaintiff to sell it (Doc. No. 97 ¶ 173)—the R&R also finds that this allegation fails to state a claim under the TCPA because courts have repeatedly held that the statute does not apply to wrongful foreclosure proceedings or loan modification claims.

The court finds no error in the Magistrate Judge's findings or recommendations. The allegations in the FAC are quite clear regarding the first two allegedly deceptive acts that form the basis for the plaintiff's TCPA claim. Lawson alleges that PennyMac sent her a false and deceptive "insurance claim package" on November 11, 2018 and that she discovered it was false on December 11, 2019—more than one year before she filed suit. (Doc. No. 97 ¶ 171(a)(i) & (iii).) Any claim premised on the false claim package is clearly time-barred. Although Lawson complains that she did not know that PennyMac was not going to remedy the situation until January 31, 2020, as the R&R explains:

> the question is not when Plaintiff was aware that the "omission wouldn't be remedied." Rather, the question is when Plaintiff knew or should have known that she had sustained an injury as a result of PennyMac's alleged wrongful conduct.

> Even though Plaintiff may have "had hope" that PennyMac would remedy its alleged "bad acting" and that she would not "have to take a legal route to recover,", the complaint clearly and unequivocally states that Plaintiff knew by December 11, 2019 that she had sustained an injury as a result of alleged wrongful conduct by PennyMac. *See John Kohl & Co.* [*v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)]. Because this discovery occurred more than one year before Plaintiff initiated her lawsuit, this first TCPA violation is time-barred.

(Doc. No. 113, at 16–17 (internal citations to the record omitted)).)

Similarly, the second act that Lawson contends violated the TCPA is PennyMac's blocking her ability to rebuild her home from November 14, 2018 to May 23, 2019. (Doc. No. 97 ¶ 172.) The plaintiff arguably should have known about this misconduct while it was happening, meaning that the cause of action would have accrued and the statute of limitations would have begun to run by May 23, 2019. Giving Lawson the benefit of the doubt, however, she also alleges that she "discovered" that PennyMac "shouldn't have even played a part in the Rebuild" on December 11, 2019, which is the day she "demanded a remedy" from PennyMac. (*Id.* ¶ 172(a)(i), (iv), (v).) Again, the facts as alleged in the FAC show that Lawson clearly knew she had suffered an injury no later than December 11, 2019. The fact that PennyMac waited until January 31, 2020 to respond to her demand for a remedy is simply irrelevant to the question of when Lawson's cause of action accrued and the limitations period began to run. The Magistrate Judge did not err in concluding that the TCPA claim premised on PennyMac's blocking the plaintiff's ability to rebuild is time-barred.

Third, PennyMac allegedly violated the TCPA "when it manufactured a fake default of the Loan, facilitating [PennyMac's] ability to accelerate the Loan, thereby forcing Lawson to sell the Property" in order to avoid foreclosure. (Doc. No. 97 ¶ 173.) Regarding this claim, the plaintiff alleges that she knew of PennyMac's wrongful acts and "knew injuries would be sustained" as a result of them by December 11, 2019. In other words, this claim, too, appears to have accrued more than one year before the plaintiff filed suit. However, even assuming that Lawson did not

suffer injury arising from PennyMac's wrongful foreclosure action until she sold her house in March 2020, she is incorrect as a matter of law in asserting that there is a jury question as to whether the TCPA applies to foreclosure proceedings. Tennessee courts, and federal courts construing Tennessee law, have repeatedly held that the TCPA does not apply to wrongful foreclosure proceedings. *See, e.g.*, *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 482 (6th Cir. 2014); *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017) ("[C]ourts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA." (citations omitted)). Thus, even if this claim is not time-barred, the FAC fails to state a claim under the TCPA in connection with the foreclosure efforts that led to the plaintiff's selling her Property.

Finally, the plaintiff attempts to evoke the doctrine of equitable tolling to extend the limitations period. State law tolling principles apply to Lawson's state law claims. *Roberson v. Macnicol,* 698 F. App'x 248, 250 (6th Cir. 2017) (citing *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949); *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 n.6 (6th Cir. 2007)). And the Tennessee Supreme Court, "unlike other state courts and the federal courts, [has] declined to recognize the doctrine of equitable tolling in civil cases." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 n.2 (Tenn. 2001); *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995)).[2] The Magistrate Judge, therefore, did not err in rejecting the plaintiff's equitable tolling argument.

---

[2] Tennessee courts distinguish between equitable *tolling* and equitable *estoppel*. Equitable estoppel applies when the defendant has "misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing*, 363 S.W.3d at 460 (citing *Fahrner*, 48 S.W.3d at 145). The doctrine of equitable estoppel "applies only when the defendant engages in misconduct." *Id.* (citing *B & B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010)).

The court will overrule the plaintiff's Objection and grant PennyMac's motion, insofar as it seeks dismissal of the plaintiff's TCPA claims.

**B.     IIED Claim**

In reviewing the plaintiff's IIED claim, the Magistrate Judge correctly identified the legal standards governing such a claim. That is, to state a claim for IIED under Tennessee law, a plaintiff must allege that the conduct complained of (1) was intentional or reckless; (2) was "so outrageous that it is not tolerated by civilized society"; (3) and resulted in "serious mental injury." *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese*, 154 S.W.3d 22, 31, 41 (Tenn. 2005) (quoting *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)). As Tennessee courts have explained:

> In describing these elements, we have emphasized that it is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (emphasis added) (internal citations and quotation marks omitted). The standard is objective rather than subjective. *See Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018) ("[T]he standard is not whether an aggrieved person (such as Doe) considers a party's actions to have been so outrageous, but whether a civilized society would so find."). Based on this standard, the R&R recommends that the plaintiff's IIED claim be dismissed for failing to allege facts that, accepted as true, would establish that PennyMac's conduct was sufficiently "outrageous"—or so "utterly intolerable in a civilized

---

Wrongful acts by a defendant that have been found to warrant application of the doctrine include "(1) when a defendant promises not to assert a statute of limitations defense, (2) when a defendant promises to pay or otherwise satisfy the plaintiff's claim without requiring the plaintiff to file suit, and (3) when a defendant promises to settle a claim without litigation following the conclusion of another proceeding between the defendant and a third party." *Id.* at 460–61 (citations omitted). The plaintiff does not allege misconduct of this type here.

community"—to give rise to a plausible IIED claim. (Doc. No. 113, at 20 (quoting *Lourcey*, 164 S.W.3d at 51).)

The plaintiff does not take issue with the R&R's statement of the law. Instead, she broadly asserts that her IIED claim should be heard by a jury so that it may decide if her claim meets Tennessee's high standard for outrageousness. (Doc. No. 117, at 21.) In support of this argument, she "incorporates all of the FAC, all of the Plaintiff's Response in Opposition to Defendants' Fourth Motions to Dismiss, and all of this memorandum of law in their entirety . . . . They are needed in their entirety, because it is the collective conduct and wrongs that are indeed not to be tolerated by any civil person or in any civil society." (*Id.*)

This type of general objection, however, raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," amounts to a waiver of the argument. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 807 n.8 (6th Cir. 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). For that reason alone, the objection will be overruled. In addition, the court has reviewed the FAC as a whole and finds that the plaintiff does not allege acts by PennyMac that, individually or collectively, are sufficiently outrageous to satisfy the high bar posed by Tennessee law. The court will accept in its entirety the Magistrate Judge's recommendation that the plaintiff's IIED claim be dismissed for failure to state a claim for which relief may be granted.

V. **CONCLUSION**

For the reasons set forth herein, both sets of Objections (Doc. Nos. 114, 116) will be overruled, and the R&R (Doc. No. 113) will be accepted in its entirety. Consequently, SWBC's Motion to Dismiss (Doc. No. 105) will be denied, and PennyMac's Motion to Dismiss (Doc. No. 103) will be granted in part and denied in part.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge